ATLANTA INTERNATIONAL INSURANCE COMPANY v BELL

Docket No. 87914. Argued January 9, 1991 (Calendar No. 6). Decided
    September 18, 1991.

Atlanta International Insurance Company brought an action in
the Wayne Circuit Court against John W. Bell, David C. Hert-
ler, and others, alleging legal malpractice in failing to raise
comparative negligence as a defense in an action for its in-
sured, Security Services, Inc., which Atlanta, as primary in-
surer, was required to satisfy. The court, Henry Szymanski, J.,
granted summary disposition for the defendants. The Court of
Appeals, Sawyer, P.J., and Weaver and Neff, JJ., affirmed in
an opinion per curiam, holding that no attorney-client relation-
ship exists between an insurance company and an attorney
representing the company's insured; rather, the attorney's sole
loyalty is owed to the client, the insured, not to the insurance
company (Docket No. 108080). The plaintiff appeals.

In opinions by Justice Brickley, joined by Justices Riley and
Griffin, by Justice Boyle, and by Chief Justice Cavanagh,
joined by Justices Levin and Mallett, the Supreme Court
*held:*

The relationship between an attorney, hired by an insurer to
defend its insured, and the insurer is not one of attorney-client.
However, under the facts of this case, the doctrine of equitable
subrogation permits a malpractice action by the insurer against
defense counsel.

1. A special relationship exists between an attorney hired by
an insurer to defend its insured, the insured, and the insurer.
The relationship does not exist by the unilateral acts of either
the attorney or the insurer, but results from the consent of the
insured. This unique relationship does not rise to the status of
an attorney-client relationship, however; rather, when an in-
sured enters into a contract for insurance, the insured by
consent waives confidentiality with regard to the insurance
carrier and agrees to coöperate in the defense of a claim, thus

References

Am Jur 2d, Attorneys at Law §§ 118, 119, 121; Insurance § 1405.
See the Index to Annotations under Attorney or Assistance of
    Attorney; Insurance and Insurance Companies.

allowing the attorney to make disclosures such as offers of settlement to the third-party insurer. The fact that an insurance company pays the attorney directly rather than reimbursing its insured does not affect the nature of the attorney-client relationship, nor does it change the fact that the attorney represents the insured client and owes a duty only to the client.

2. Equitable subrogation is a legal fiction permitting one party to stand in the shoes of another, and is applicable under the facts of this case. A defense counsel's immunity from suit for malpractice by an insurer would place the loss for the attorney's misconduct on the insurer. In such an action, however, the interests of the insurer and the insured generally merge: both have an interest in not having the case dismissed. Although an insurer should not be permitted to sue a defense counsel for malpractice over perceived errors of trial strategy, in this case, the alleged failure to raise comparative negligence as a defense, if true, comprised professional malpractice. In this case, the attorney-client relationship and the interests of the client and the insured, and ultimately the public, all benefit from the defense attorney's exposure to suit.

Justice BOYLE, concurring, stated that while no attorney-client relationship exists between an attorney, hired by an insurer to defend its insured, and the insurer, in this case there is no apparent divergence between the interests of the insurer and those of the insured, nor any evident threat to the interests protected by the attorney-client relationship; thus, the doctrine of equitable subrogation appropriately is applied. This conclusion would be subject to reëxamination when the record in this case or another more fully presents the basis for a claim that public policy in support of the interests protected by the attorney-client relationship requires barring such a cause of action.

Affirmed in part and reversed in part.

Justice BRICKLEY, joined by Justices RILEY and GRIFFIN, further stated:

An attorney is liable for malpractice only to a client except in special circumstances. The relationship between an insurer and an attorney hired by the insurer to defend its insured, while less than attorney-client, unquestionably differs from the relationship between a defense counsel and a party-opponent. Because liability insurance policies obligate the insurer to provide the insured with a defense and entitle the insurer to control the defense, the insurer has both a duty and a right with regard to the defense of the insured, and the defense counsel has a fiduciary relationship with the insured as well as

the insurer. In addition, because the insurer is required to satisfy a judgment resulting from defense counsel's malpractice, the insured has no real incentive to sue defense counsel. This case reveals the inadequacy of predicating the analysis of malpractice liability solely on the lack of an attorney-client relationship: No conflict of interest is presented between the interests of the insurer and the public policy of ensuring undiluted loyalty by counsel to the insured, and the nature of the insurer-defense counsel relationship presents special circumstances that remove it from the practical ambit of the general rule against the imposition of third-party liability.

Chief Justice CAVANAGH, joined by Justices LEVIN and MALLETT, further stated:

Liability for malpractice should not be extended to all foreseeable parties. The question of duty essentially involves whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person. The relationship that gives rise to the duty in a legal malpractice case is the attorney-client relationship. Where an attorney is hired by an insurer to represent the insured, the attorney is required to exercise independent professional judgment on behalf of the insured; recognition of a separate duty to the insurer might significantly interfere with the attorney's ability to choose the most appropriate course of action for the insured. Therefore, the attorney's duty should not be extended to the insurer.

In this case, public policy does not support subrogation of the insurer for the insured against a negligent attorney hired by it to represent an insured. The cornerstone of the attorney-client relationship is the attorney's duty of loyalty to the client. To hold the attorney liable to the insurer either directly, on the basis of negligence, or indirectly, on the basis of equitable subrogation, could substantially impair the attorney's ability to make decisions that require a choice between the best interests of the insurer and the best interests of the insured.

Because only those to whom a negligent party owes a direct duty may maintain a cause of action, in this case, the cause of action for legal malpractice rests with the insured, not the insurer.

181 Mich App 272; 448 NW2d 804 (1989) affirmed in part and reversed in part.

ATTORNEY AND CLIENT — INSURERS — INSUREDS.

The relationship between an attorney, hired by an insurer to defend its insured, and the insurer is not one of attorney-client.

*Dise & Gurewitz, P.C.* (by *John H. Dise, Jr.*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *John P. Jacobs, Christine D. Oldani,* and *Patrick M. Barrett*), for the defendants.

Amici Curiae:

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James G. Gross*), for Auto Club Insurance Association, Castle Insurance Company, Auto Club Group Insurance Company, and Ad Hoc Committee of Defense Counsel for Professional Accountability.

*Kerr, Russell & Weber* (by *C. Kenneth Perry, Jr., Edward C. Cutlip, Jr.,* and *Janice A. Furioso*) for Defense Research Institute, Inc.

*Kallas, Lower, Henk & Treado, P.C.* (by *Constantine N. Kallas*), for Michigan Association of Insurance Companies & American Insurance Association.

*Collins, Einhorn & Farrell, P.C.* (by *Noreen L. Slank*), for Michigan Defense Trial Counsel.

BRICKLEY, J. This case presents an issue of first impression: whether defense counsel retained by an insurance company to defend its insured can be held answerable to the insurer for professional malpractice. The Court of Appeals held that defense counsel may not be sued by the insurer for malpractice.

We agree with the analysis of the dissent articulated in section (I)(B) that principles of common-law negligence do not generally require imposition of third-party liability in the malpractice context. We

also agree with the dissent that something less than a plenary attorney-client relationship exists between a defense counsel and an insurer. However, we would reverse the decision of the Court of Appeals and would hold that in this case the doctrine of equitable subrogation permits a malpractice action against defense counsel under the facts presented.[1]

This opinion contains three sections. Section I recites the facts and the procedural history of the case. Section II demonstrates the inadequacy of denying liability purely because the relationship between the insurer and retained counsel for the insured comprises a mere contractual relationship rather than an attorney-client relationship. Section III outlines the doctrine of equitable subrogation and explains why equitable subrogation particularly applies for policy reasons under these facts.

I

On August 31, 1977, Herbert H. Harvey went to work as a tilesetter at a construction site, now Lakeside Mall in Sterling Heights. At the construction site, Security Services, Inc., was employed to safeguard the premises. As Mr. Harvey entered the premises, he passed two departing Security Services' employees, and, approximately 120 feet into the construction site, fell into a 20 × 20 foot hole. Mr. Harvey died from his injuries.

---

[1] We pause here to stress that the application of equitable subrogation should and must proceed on the case-by-case analysis characteristic of equity jurisprudence. As we noted in *Solo v Chrysler Corp (On Rehearing)*, 408 Mich 345, 353; 292 NW2d 438 (1980): "Whether a given case falls within equity jurisdiction is a question different from whether the case is one in which the relief peculiar to that jurisdiction should be granted."

In September of 1980, the administrator of Mr. Harvey's estate brought an action against numerous parties, including Security Services. The plaintiff, Atlanta International Insurance Company, insured Security Services. As part of Atlanta's contractual obligation, Atlanta retained John W. Bell, David H. Hertler, and Bell & Hertler, P.C. (hereinafter defendants), to represent Security Services in the suit. Defendants answered the complaint, but failed to raise comparative negligence as a defense.[2] A judgment was subsequently entered against Security Services, which Atlanta, as Security Services' primary insurer, was required to satisfy.

Atlanta then filed this suit, alleging that these defendants committed legal malpractice by failing to raise comparative negligence as a defense. After discovery, Atlanta filed a motion for partial summary disposition on the issue whether an attorney-client relationship existed between Atlanta and the defendants. Atlanta also filed a motion to amend its original complaint to add a breach of contract claim. The defendants countered with a motion for summary disposition, alleging that no attorney-client relationship existed between Atlanta and the defendants. The circuit court denied Atlanta's motions and granted the defendants' motion for summary disposition. Atlanta sought reversal in the Court of Appeals.

The Court of Appeals affirmed, stating: "No

---

[2] In defendant Bell's deposition he stated:

> Q. Based on your experience as an attorney since 1949, do you believe that you met the standard of care required of a practicing attorney in the Metropolitan Detroit area in failing to file a motion to plead comparative negligence prior to the motion in May of 1984?
>
> A. I would have to admit that I did not conform to the standard of care that I should have.

attorney-client relationship exists between an in-
surance company and the attorney representing
the insurance company's insured. . . . Rather, an
attorney's sole loyalty and duty is owed to the
client alone, the client being the insured, not the
insurance company." 181 Mich App 272, 274; 448
NW2d 804 (1989). The Court of Appeals also af-
firmed the denial of Atlanta's motion to amend its
complaint.

II

The general rule of law implicated in this case
dictates that "an attorney will be held liable
for . . . negligence only to his client, and cannot,
in the absence of special circumstances, be held
liable to anyone else."[3] This Court flatly refused to
extend malpractice liability against opposing coun-
sel by a party-opponent in *Friedman v Dozorc,* 412
Mich 1, 24-25; 312 NW2d 585 (1981).

*Friedman* held:

> [The] creation of a duty in favor of an adversary
> of the attorney's client would create an unaccept-
> able conflict of interest which would seriously
> hamper an attorney's effectiveness as counsel for
> his client. Not only would the adversary's interests
> interfere with the client's interests, the attorney's
> justifiable concern with being sued for negligence
> would detrimentally interfere with the attorney-
> client relationship.

Traditional legal doctrine thus mandates that only
a person in the special privity of the attorney-
client relationship may sue an attorney for mal-
practice. This rule exists to ensure the inviolabil-
ity of the attorney's duty of loyalty to the client.
Allowing third-party liability generally would de-

[3] 7 Am Jur 2d, Attorneys at Law, § 232, p 274.

tract from the attorney's duty to represent the
client diligently and without reservation. The es-
sential purpose of the general rule against mal-
practice liability from third parties is thus to
prevent conflicts from derailing the attorney's un-
swerving duty of loyalty of representation to the
client.

However, the relationship between the insurer
and the retained defense counsel, while less than a
client-attorney relationship, unquestionably differs
from the relationship between a defense counsel
and a party-opponent. The relationship differs be-
cause "[l]iability insurance policies typically in-
clude provisions that both obligate the insurer to
provide the insured with a defense and entitle the
insurer to control the defense . . . [;] the insurer
has both a 'duty' and a 'right' in regard to the
defense of the insured . . . ."[4] It has been appro-
priately recognized that "[defense counsel] occu-
pies a fiduciary relationship to the insured, as well
as to the insurance company . . . [and] implicitly,
if not explicitly, represents to the insured the
ability to exercise professional competence and
skill in conducting the insured's defense."[5] Fur-
thermore, because the insurance company, not the
client, is required to satisfy a judgment arriving
from a defense counsel's malpractice, the client
has no real incentive to sue defense counsel.

At the same time, courts and commentators
recognize universally that the tripartite relation-
ship between insured, insurer, and defense counsel
contains rife possibility of conflict.[6] The interest of
the insured and the insurer frequently differ. Ac-

[4] Keeton & Widiss, Insurance Law, p 822.

[5] *Id.* at 835-836.

[6] See, e.g., Mallen & Levit, Legal Malpractice, § 263, p 356, recogniz-
ing that "[t]here is great temptation [for defense counsel] to favor [the
insurance company] who pays the bills and will send further business,
and where long-standing personal relations may exist . . . ." Keeton

cordingly, courts have consistently held that the defense attorney's primary duty of loyalty lies with the insured, and not the insurer.

The entire structure of the relationship between the insurance company, the insured, and the attorney rests on the twin pillars of duty of loyalty to the insured by defense counsel and conflict of interest prevention. The case at bar reveals the inadequacy of predicating the analysis of malpractice liability solely on the lack of an attorney-client relationship between the insurer and defense counsel. The instant case does not present a conflict between the interests of the insurer and the public policy of ensuring undiluted loyalty by counsel to the insured. The nature of the insurer-defense counsel relationship thus presents the special circumstances alluded to by the dissent that removes this case from the general rule against the imposition of third-party liability.[7] For these reasons, the case is most efficiently and justly resolved by the principle of equitable subrogation.

The issue whether an attorney hired by an insurer to defend its insured *may be liable* for professional malpractice to the insurer cannot be adequately resolved without determining whether defense counsel *should* be held liable to the insurer and without vindicating public policy rationale that undergirds the attorney-client relationship in the insurance defense context.[8]

---

& Widiss, *supra* at 829-830: "An attorney employed by an insurer to represent an insured may be confronted with serious conflict of interests issues almost from the very outset of the relationship."

[7] *Post,* p 531, citing *Savings Bank v Ward,* 100 US 195, 200; 25 L Ed 621 (1879).

[8] *Friedman* vindicated the public policy of maintaining "a vigorous adversary system [which] outweighs the asserted advantages of finding a duty of due care to an attorney's legal opponent." 412 Mich 25. Obviously, the unique tripartite insurance context presents an analytically different public policy.

To hold that an attorney-client relationship exists between insurer and defense counsel could indeed work mischief, yet to hold that a mere commercial relationship exists would work obfuscation and injustice. The gap is best bridged by resort to the doctrine of equitable subrogation to allow recovery by the insurer. Equitable subrogation best vindicates the attorney-client relationship and the interests of the insured, properly imposing the social costs of malpractice where they belong. Allowing the insurer to stand in the shoes of the insured under the doctrine of equitable subrogation best serves the public policy underlying the attorney-client relationship.

III

Subrogation, simply defined, involves "the substitution of one person in the place of another with reference to a lawful claim or right."[9] Subrogation has been described by courts as flexible and elastic equitable doctrine, and hence "the mere fact that the doctrine of subrogation has not been previously invoked in a particular situation is not a prima facie bar to its applicability."[10] Two types of subrogation exist in the insurance context: "conventional [subrogation, the] product of an agreement by the parties [and legal subrogation,] the creation of the law (or more accurately of equity.)"[11]

Equitable subrogation has been described as a "legal fiction" that permits one party to stand in

[9] 73 Am Jur 2d, Subrogation, § 1, p 598.

[10] *Id.,* p 602. Thus, the reality that no case has applied the doctrine under dissimilar facts does not bar its application under these particular facts.

[11] Kimball & Davis, *The extension of insurance subrogation,* 60 Mich L R 841 (1962).

the shoes of another.[12] The doctrine is eminently applicable under the facts of this case. A rule of law expanding the parameters of the attorney-client relationship in the defense counsel-insurer context might well detract from the attorney's duty of loyalty to the client in a potentially conflict-ridden setting. Yet to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer. The only winner produced by an analysis precluding liability would be the malpracticing attorney. Equity cries out for application under such circumstances.[13]

The defense counsel-insurer relationship is unique. The insurer typically hires, pays, and consults with defense counsel. The possibility of conflict unquestionably runs against the insured, considering that defense counsel and the insurer frequently have a longstanding, if not collegial, relationship.

---

[12] *Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109, 117; 393 NW2d 479 (1986). It has been noted that "[a] legal fiction may be benign in one context, and dangerous or brutal in another." Harmon, *Falling off the vine: Legal fictions and the doctrine of substituted judgment,* 100 Yale L J 1, 61 (1990). In this case, the application of equitable subrogation is not only benign, but clearly beneficial compared to the mechanical application of the governing legal rule prohibiting liability absent a formal attorney-client relationship.

[13] See, e.g., Keeton & Widiss, n 4 *supra,* pp 220-221:

Courts also tend to favor subrogation if it appears that a third party tortfeasor would be likely to escape financial responsibility if the insurer were not accorded a subrogation right. Thus, subrogation often is appropriately viewed as an important technique for serving the ends of justice by placing the economic responsibility for injuries on the party whose fault caused the loss . . . .

In a malpractice action against a defense counsel, however, the interests of the insurer and the insured generally merge. The client and the insurer both have an interest in not having the case dismissed because of attorney malpractice. Allowing recovery for the insurer on the basis of the failure of defense counsel to adhere to basic norms of duty of care thus would not "substantially impair an attorney's ability to make decisions that require a choice between the best interests of the insurer and the best interests of the insured." (*Post,* p 535.) The best interests of both insurer and insured converge in expectations of competent representation.[14]

Defense counsel is not being held accountable to the insurer for malpractice over perceived errors of trial strategy in which a different situation would be presented.[15] However, this alleged conduct, if true, comprised serious professional malpractice. In such cases the attorney-client relationship, the interests of the client, the interest of the insurer, and ultimately the public, which otherwise would absorb the costs of the malpractice, all benefit from exposure to suit. The dissent erroneously asserts that no clear persuasive public policy reasons exist to support the right of subrogation for the insurer.[16]

[14] See Mallen & Levit, n 6 *supra* at 356-357: "The duty of the attorney is to defend the insured. A successful defense is the common goal of all and is consonant with the interests of [all] parties."

[15] Here courts must certainly recognize that "in some circumstances the conflicting interests [between insurance companies and defense counsel regarding tactical decisions] are so intense that no accommodation is possible between the views as to which of the possible tactics should be employed." Keeton & Widiss, *supra* at 820-821. This case in no way presents such a circumstance.

[16] The law of professional malpractice itself provides an inherent limitation on unwarranted lawsuits brought by an insurer to the extent that a showing of malpractice essentially requires a showing that but for the attorney's error, the plaintiff would have prevailed in the action.

For the foregoing reasons, we approve the remedy of equitable subrogation—a less sweeping, less rigid solution than creation of an attorney-client relationship between the insurer and defense counsel, but a more flexible, more equitable solution than absolution from liability for professional malpractice.[17]

Riley and Griffin, JJ., concurred with Brickley, J.

Boyle, J. (*concurring*). For the reasons set forth in Chief Justice Cavanagh's dissent, I would unequivocally decline to recognize a direct cause of action by the insurer for legal malpractice. I would go beyond the majority's observation that "something less than a plenary attorney-client relationship exists between a defense counsel and an insurer," and clearly state that no attorney-client relationship exists between a defense counsel and an insurer. The attorney-client relationship is with the insured only.

I concur in Justice Brickley's reasoning and conclusion that the doctrine of equitable subrogation is appropriately applied to the circumstances of this case. On this record, I perceive no divergence between the interests of the insurer and those of the insured. Nor is there any evident threat to the interests protected by the attorney-client relationship. However, because the trial court record indicates that the parties did not focus on equitable subrogation, we can only speculate regarding the effect of the privilege and the extent to which a court, in recognition of the

---

[17] The application of equitable subrogation here thus represents the most principled use of the legal fiction: "[N]o fiction shall extend to work an injury; [its] proper operation being to prevent a mischief, or remedy an inconvenience, that might result from the general rule of law." 3 Blackstone, Commentaries, ch 4, p 61.

privilege, may sustain an objection to testimony or evidence, that would effectively preclude the case from going forward. MCR 2.116(C)(8), (10), 2.504(B)(2), 2.515.

Thus, while I agree on this record with the abstract proposition that the action in equitable subrogation may go forward, this conclusion is subject to reëxamination when the record in this case or another more fully presents the basis for a claim that public policy in support of the interests protected by the attorney-client relationship requires barring such a cause of action.

CAVANAGH, C.J. (*dissenting*). We accept the majority's statement of facts and limit our analysis to the three arguments of Atlanta.[1] Since the majority permits Atlanta to proceed under a theory of equitable subrogation, we dissent.

I

Atlanta's first argument is that there is an attorney-client relationship between the insurer and the attorney for the insured when the interest of the insurer and the insured do not conflict. Atlanta's second argument is that even if there is not an attorney-client relationship, this Court should extend legal malpractice liability to all foreseeable parties. Atlanta's third argument is that this Court should find the defendants liable under a theory of equitable subrogation. We will address Atlanta's arguments seriatim.

A

Atlanta asserts that when an attorney is hired

---

[1] For purposes of convenience, all arguments, whether made by Atlanta or supporting amici curiae, will be referred to as having been made by "Atlanta."

by the insurance company to represent its insured an attorney-client relationship exists with both the insured and the insurer. Atlanta recognizes that conflicts between the insurer and the insured can arise involving reservation of rights, defense of alternative claims, coverage, policy limits, and defense of multiple clients. If a conflict arises, the primary obligation of the attorney is to the insured. In this case, however, no conflict of interest arose. According to Atlanta, the interests of the insured and the insurer throughout the entire underlying lawsuit were exactly the same—to limit their exposure as much as possible. Since there was no conflict of interest between the insured and the insurer, a concurrent attorney-client relationship existed between the attorney and the insured and the insurer.

Atlanta relies on the model code promulgated by the American Bar Association and the Michigan Rules of Professional Responsibility.[2] Specifically, the American Bar Association Formal Opinion No. 282, issued in 1950, p 622, provides:

> From an analysis of their respective undertakings it is evident at the outset that a community of interest exists between the company and the insured growing out of the contract of insurance with respect to any action brought by a third person against the insured within the policy limitations. The company and the insured are virtually one in their common interest.

Plaintiff also cites EC 5-17 of the American Bar

---

[2] We note that the Code of Professional Responsibility, adopted by this Court on October 4, 1971, was superseded by the Michigan Rules of Professional Conduct on October 1, 1988. The Code of Professional Responsibility, however, governs conduct occurring before October 1, 1988.

Association Model Code[3] and Michigan Rule of
Professional Responsibility, DR 5-105(C).[4] Accord-
ing to Atlanta, these rules contemplate the exis-
tence of an attorney-client relationship between
the attorney and the insured and the insurer,
contrary to the decision of the Court of Appeals.[5]

---

[3] EC 5-17 provides:

Typically recurring situations involving potentially differing
interests are those in which a lawyer is asked to represent co-
defendants in a criminal case, co-plaintiffs in a personal injury
case, an insured and his insurer, and beneficiaries of the estate
of a decedent. Whether a lawyer can fairly and adequately
protect the interest of multiple clients in these and similar
situations depends upon an analysis of each case.

[4] DR 5-105(C) provides:

In the situations covered by DR 5-105(A) and (B), a lawyer
may represent multiple clients if it is obvious that he can
adequately represent the interest of each and if each consents
to the representation after full disclosure of the possible effect
of such representation on the exercise of his independent
professional judgment on behalf of each.

[5] See also Informal Ethics Opinion CI-1146 which provides:

It is of social value and ethically permissible for an attorney
employed by an insurance company to also represent the
insured, provided that the interests of the insurer and the
insured do not conflict. If improper influences are exerted by
the employer-insurer, which interfere with the independent
judgment of the employee-attorney which, if complied with,
would result in an attorney having to violate the Code of
Professional Responsibility, the attorney must withdraw as
counsel for the insured.

In addition, MRPC 1.7, which was adopted after this suit was
initiated, provides:

Conflict of Interest: General Rule
(a) A lawyer shall not represent a client if the representation
of that client will be directly adverse to another client, unless:
(1) the lawyer reasonably believes the representation will not
adversely affect the relationship with the other client; and
(2) each client consents after consultation.
(b) A lawyer shall not represent a client if the representation

We agree that a special relationship exists between the attorney and the insured and the insurer. The relationship, however, does not exist by the unilateral acts of either the attorney or the insurer. The special relationship results from the consent of the insured. When the insured enters into a contract for insurance, the insured by consent waives certain rights normally provided by the Rules of Professional Responsibility. For instance, the attorney for the insured is required to disclose to the insurer offers of settlement. Normally, disclosure of an offer of settlement by the attorney to a third party would be a violation of the attorney's duty of confidentiality to the client.[6]

of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

[6] Canon 4, DR 4-101 of the Michigan Rules of Professional Responsibility (now MRPC 1.6) provided:

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

The reason, however, for allowing the attorney to make disclosures to the insurance carrier is not that there is an attorney-client relationship between the insurer and the attorney, but that the client waives this confidentiality with regard to the insurance carrier and agrees to coöperate in the defense of a claim upon signing the contract of insurance.[7] Thus, it is the insurance contract that creates a special relationship between the attorney, the insured, and the insurer. This unique relationship, however, does not rise to the status of an attorney-client relationship. We agree with the Court of Appeals when it stated:

> Indeed, the insurance company's relationship is, in reality, with its insured; that is, the insurance company is obligated to pay the attorney fee incurred by its insured in defending litigation covered by an applicable insurance policy. The fact that an insurance company may directly pay the attorney fee rather than merely reimbursing its insured does not affect the nature of the attorney-client relationship nor does it change the fact that the attorney represents the insured client and

---

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client, except that a lawyer may reveal the information allowed by DR 4-101(C) through an employee.

[7] Under this policy, Atlanta and the insured agreed as follows:

[T]he company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient . . . .

only owes a duty to that insured client. [*Id.,* pp 274-275.][8]

**B**

This Court is next urged to extend malpractice liability to all foreseeable parties. Relying on *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), Atlanta argues that a cause of action should arise for every injured person in the class of persons likely to be injured and states:

> In this circumstance, it can hardly be argued that the insurance carrier who will have to pay any judgment is not within the foreseeable class of persons who will be harmed by the negligent acts of counsel in defense of the insured. Clearly, the entity most likely to be harmed in this circumstance is the insurance carrier. While it is true that the insured also is a person who may be harmed by the malpractice, in this case, and in most other similar cases, it is the insurance company who will suffer the most if not all of the harm.

In *Moning* at 438-439, this Court stated that "[d]uty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." The relationship that gives rise to the duty in a legal malpractice case is the attorney-client rela-

---

[8] See *Continental Casualty Co v Pullman, Comley, Bradley & Reeves,* 929 F2d 103, 108 (CA 2, 1991).

> Even though trial counsel is selected by and looks to an insurer for compensation, and although he keeps the insurer "informed about the progress of the case, we do not find those factors to be conclusive. 'An attorney's allegiance is to his client, not to the person who happens to be paying for his services.' " [Citations omitted.]

tionship. This general requirement of an attorney-client relationship in a legal malpractice claim was articulated over one hundred years ago in *Savings Bank v Ward,* 100 US 195, 200; 25 L Ed 621 (1879).

> Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third party, and unless there is something in the circumstances of this case to take it out of that general rule, it seems clear that the proposition of the defendant must be sustained. . . . [A]n attorney is not liable to an action for negligence, at the suit of one between whom and himself the relation of attorney and client does not exist, for giving, in answer to a casual inquiry, erroneous information as to the contents of the deed.

This Court addressed an attorney's duty to a third party in *Friedman v Dozorc,* 412 Mich 1; 312 NW2d 585 (1981), holding that an attorney owed no legal duty to an adversary.[9] Atlanta attempts to distinguish this case from *Friedman* on the ground that in this case the insurer and the insured were not adversaries, and in fact had identical interests in disposing of the case.[10] We find, however, that this is a distinction without a difference.

---

[9] We recognize that in *Rosenberg v Cyrowski,* 227 Mich 508, 513; 198 NW 905 (1924), this Court held that " '[a]n attorney's liability does not end with being answerable to his client. He is also liable to third persons who have suffered injury or loss in consequence of fraudulent or tortious conduct on his part.' " Citing 1 Thornton, Attorneys at Law, § 295, p 523. We distinguish *Rosenberg* on the ground that in *Rosenberg* the plaintiffs were alleging that the attorney's conduct amounted to fraud. In this case, however, it is undisputed that the attorney's action amounted to no more than mere negligence.

[10] See also *American Employers' Ins Co v Medical Protective Co,* 165 Mich App 657, 660; 419 NW2d 447 (1988), in which the Court stated:

> Although the plaintiff excess insurer may be characterized as an equitable subrogee of the insured physician, it may not sue the insured's defense attorney for legal malpractice. To hold

Conflicts of interest are matters of degree.[11] In every case where an attorney is hired by an insurer to represent the insured, the attorney embarks down a road laden with potential conflict.[12] According to Canon 5, a lawyer is required to "exercise independent professional judgment on behalf of a client." To recognize a separate duty to the insurer might significantly interfere with the attorney's ability to choose the most appropriate course of action for the insured.[13] We, therefore decline to extend an attorney's duty to the insurer.

otherwise would in our judgment acknowledge a direct duty owed by the insured's attorney to the excess insurer and would be tantamount to saying that insurance defense attorneys do not owe their duty of loyalty and zealous representation to the insured client alone. Such a holding would contradict the personal nature of the attorney-client relationship, which permits a legal malpractice action to accrue only to the attorney's client.

[11] We stated in *Friedman,* p 24, n 10:

"Most if not all questions of conflict of interest are questions of degree. As noted above, minor and inevitable conflicts inherent in client-lawyer relationships necessarily must be tolerated. On the other hand, a conflict of interest may be so sharp as to preclude the lawyer from representing a particular client. For example, under no circumstances could a lawyer properly represent both the plaintiff and the defendant in contested litigation, or represent parties to a negotiation whose interests are fundamentally antagonistic to each other. When it is plain that prejudice to the client's interests is likely to result, the lawyer should not undertake the representation even with the consent of the client. A client's consent does not legitimate a lawyer's abuse of professional office."

[12] MRPC 5.4(c) provides:

A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.

[13] We note that the State Bar of Michigan has twice addressed this issue in informal ethics opinions CI-866 and CI-876.
Informal Ethics Opinion CI-866 provides:

The obligation of the attorney runs to the insured party

C

Atlanta's third argument, and the crossroad between the majority and this dissent, is that it should be allowed to recover under a theory of equitable subrogation. Relying on *Smith v Sprague,* 244 Mich 577; 222 NW 207 (1928), Atlanta argues that "[t]he doctrine of equitable subrogation is properly applied where no legal [principles] exist upon which to grant Plaintiff relief, but justice requires that some form of recovery be permitted."[14] In essence, Atlanta claims that as a

rather than the insurer in such case as the attorney has appeared for and represents the insured in pending litigation, notwithstanding that the insurer is paying for such representation.

If the interest of the insurer and insured in such case are in conflict, the attorney must advocate and represent the interest of the insured in accordance with the Code of Professional Responsibility or withdraw. Canon 7 of the Code of Professional Responsibility; DR 5-105; Informal Ethics Opinion CI-309; and Ethical Consideration, EC-17. (2-10-83)

In addition, Informal Ethics Opinion CI-876 states:

An attorney retained by an insurance company to defend a legal claim under a policy of insurance has an attorney-client relationship with the insured, and is ethically obligated to promptly communicate any significant settlement offer to the insured and otherwise keep the client reasonably informed concerning the progress of the matter. (6-9-83)

[14] See *Commercial Union Ins Co v Medical Protective Co,* 426 Mich 109, 117; 393 NW2d 479 (1986), where we stated:

Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other. It is well-established that the subrogee acquires no greater rights than those possessed by the subrogor, and that the subrogee may not be a "mere volunteer." [Citing *Foremost Life Ins Co v Waters,* 88 Mich App 599, 603; 278 NW2d 688 (1979), rev'd on other grounds 415 Mich 303; 329 NW2d 688 (1982); *Smith v Sprague, supra,* pp 579-580.]

matter of equity, since Security Services has chosen not to sue the defendants, it should be allowed to stand in Security Services' shoes to prosecute this malpractice claim. Agreeing with Atlanta, the majority reasons that "the attorney-client relationship, the interests of the client, the interest[s] of the insurer, and ultimately the public, which otherwise would absorb the costs of the malpractice, all benefit from exposure to suit." *Ante,* p 523. We disagree that it is in the best interest of the attorney-client relationship to expose the attorney to liability to the insurer, and, simply stated, we believe that the "shoes" of Security Services do not fit Atlanta.

As stated by the majority, subrogation has two forms: conventional (arising out of contract), and legal (arising out of equity). See *Machined Parts Corp v Schneider,* 289 Mich 567, 574; 286 NW 831 (1939).[15]

Applying equitable subrogation requires this Court to balance the public policy concerns associated with the attorney-client relationship against the liability of the attorney to an insurer for negligence. Balancing the policy concerns, we disagree with the majority and would find that the policy reasons in favor of the former outweigh the latter. In so finding, we agree with the majority that the cornerstone of the attorney-client relationship is an attorney's duty of loyalty to the client. *Ante,* p 519. The majority, however, meddles in this relationship by allowing the insurer to indirectly recover a contractual debt. Although the majority attempts to limit its holding to the facts

[15] Conventional subrogation, or what otherwise might be termed an assignment of a cause of action (in this case a legal malpractice claim), although never addressed by this Court, has been found to be against public policy by the Court of Appeals. See *Joos v Drillock,* 127 Mich App 99, 104; 338 NW2d 736 (1983). See also *Goodley v Wank & Wank, Inc,* 62 Cal App 3d 389; 133 Cal Rptr 83 (1976).

of this case, we dissent from this view because we believe that a prophylactic rule is required to guide the attorney down a road laden with potential conflicts. To hold an attorney, whose sole loyalty runs to the client, liable to the insurer either directly, on the basis of negligence, or indirectly, on the basis of equitable subrogation, could substantially impair an attorney's ability to make decisions that require a choice between the best interests of the insurer and the best interests of the insured.

## II

Although this case involves the unique relationship between an insurer, an insured, and an attorney hired to represent the insured, a standard principle applies: Those to whom the negligent party owes a duty may maintain a cause of action. In the context of this case, unlike the majority, we find that the cause of action rests with the insured and not the insurer. For all the above reasons, we dissent.

LEVIN and MALLETT, JJ., concurred with CAVANAGH, C.J.