ATTORNEYS FOR APPELLANTS
QUERREY & HARROW, LTD.,
JAMES N. KOSMOND, AND
GRETCHEN CEPEK

Robert D. Brown
Spangler, Jennings & Dougherty, P.C.
Merrillville, Indiana

James J. Stamos/George M. Hoffman
Stamos & Trucco, LLP
Chicago, Illinois

ATTORNEY FOR APPELLANTS
SANDERS PIANOWSKI, LLP AND
ROBERT A. SANDERS

Edward W. Hearn
Johnson & Bell, LTD
Highland, Indiana

ATTORNEYS FOR APPELLEE
TRANSCONTINENTAL INS. CO.

Andrew A. Crosmer
Rubino, Ruman, Crosmer, Smith,
    Sersic & Polen
Dyer, Indiana

Gary A. Grasso
Grasso, Bass & Williams, P.C.
Burr Ridge, Illinois



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S03-0708-CV-307

QUERREY & HARROW, LTD.,
JAMES N. KOSMOND, GRETCHEN CEPEK, SANDERS PIANOWSKI, LLP., AND
ROBERT A. SANDERS, INDIVIDUALLY,

*Appellants (Defendants below),*

v.

TRANSCONTINENTAL INSURANCE COMPANY,

*Appellee (Plaintiff below).*

Appeal from the Lake Superior Court, No. 45D05-0401-CT-264
The Honorable Robert A. Pete, Judge

On Transfer from the Indiana Court of Appeals, No. 45A03-0601-CV-36

**May 13, 2008**

**Dickson, Justice.**

Addressing an issue of first impression in Indiana, the Court of Appeals holds that an excess insurer may not bring an action for legal malpractice against the insured's attorneys. Querry

& Harrow v. Transcontinental Ins. Co., 861 N.E.2d 719 (Ind. Ct. App. 2007). We agree and now adopt this opinion as to all issues addressed. Ind. Appellate Rule 58(A)(1).

The principal argument addressed by the Court of Appeals is whether or not to extend the availability of equitable subrogation to excess insurance policy carriers to enable them to sue the attorneys of its insured for legal malpractice. Emphasizing the paramount importance of a lawyer's duties of client loyalty and maintaining client confidentiality, the court considers Indiana decisions concerning the doctrine of equitable subrogation and the prohibition against assignments of legal malpractice actions. It also explores the decisions of various other jurisdictions that have considered the same or related issues. We find that the analysis and conclusion of the Court of Appeals are sound and proper.

In a secondary issue, the Court of Appeals finds no material issue of fact existed indicating an attorney-client relationship between the insured's attorneys and the excess insurer. The court finds that communications between the insured's attorneys and the excess insurer fell "far short" of implying that the attorneys consented to represent their client, the insured, and the insured's excess insurer. We agree.

We adopt the opinion of the Court of Appeals. This cause is remanded for the entry of summary judgment in favor of the appellants-defendants.

Shepard, C.J., and Rucker, J., concur. Boehm, J., concurs in result. Sullivan, J., dissents with separate opinion.

**Sullivan, Justice, dissenting.**

In this case, an insurance company that had paid $3,740,000 as part of a settlement of a personal injury claim sued the law firms and lawyers for its insured on a theory of equitable subrogation, contending that the law firms and lawyers had committed professional negligence by not timely raising a non-party defense to the claim. The trial court denied the defendant law firms' and attorneys' motions for summary judgment, but the Court of Appeals reversed. This Court has decided to adopt the opinion of the Court of Appeals.

There are a number of aspects of this case that suggest to me that the plaintiff insurance company would be unlikely to prevail — the size of the settlement compared to the estimated value of the claim, the likelihood of sound strategic reasons for not raising a non-party defense, etc. But I do not agree with my colleagues that equitable subrogation is never available to enable an insurer to recover for losses it incurs that are caused by the malpractice of its insured's attorney.

"'One who asserts a right of subrogation must step into the shoes of, or be substituted for, the one whose claim or debt he has paid and can only enforce those rights which the latter could enforce.' . . . Consequently, in order for the insurer to assert a right of subrogation, (1) the insured must have a cause of action against the purported tortfeasor, and (2) it must be equitable to allow the insurer to enforce a right of subrogation." Nat'l Union Ins. Co. v. Dowd & Dowd, P.C., 2 F. Supp. 2d 1013, 1021 (N.D. Ill. 1998) (quoting and citing Dix Mut. Ins. Co. v. LaFramboise, 597 N.E.2d 622, 624-25 (Ill. 1992)). The plaintiff insurance company's relationship to the defendant law firms and lawyers tracks these elements. Its insured would clearly be entitled to assert a claim that these defendants committed malpractice. The question, then, is not whether the elements of an equitable subrogation claim are present here but whether, as a matter of policy, this State should recognize equitable subrogation under these circumstances.

While I acknowledge that the majority of states that have looked at this question have reached the same result as the Court does today, some have not. In the National Union Insurance Co. case quoted above, National Union was the excess insurance carrier for Schneider National

Carriers, Inc. 2 F. Supp. 2d at 1015. A Schneider driver was in a collision that resulted in a lawsuit against Schneider and the driver. Schneider retained Dowd & Dowd for the defense. A jury awarded the plaintiff a judgment that exceeded Schneider's self-insurance, and National Union paid the remainder of the judgment. National Union then brought a legal malpractice claim against Dowd & Dowd. Id. The United States District Court for the Northern District of Illinois held that under Illinois law, National Union could pursue its legal malpractice claim against Dowd & Dowd under a theory of equitable subrogation. Id. at 1022. In so holding, the court considered general equitable principles and broader policy concerns as to the proper allocation of the cost of attorney malpractice, see id. at 1023-24 ("Malpracticing attorneys should not enjoy a windfall merely because the insured contracted for excess insurance coverage.").

The Michigan Supreme Court has also applied equitable subrogation to similar facts. In Atlanta International Insurance Co. v. Bell, Atlanta International Insurance filed a legal malpractice action against Bell & Hertler. 475 N.W.2d 294, 296 (Mich. 1991). Bell & Hertler had been hired by Atlanta International to defend Security Services, Inc., for whom Atlanta International was the primary insurer, against a lawsuit. A judgment was entered against Security Services that Atlanta International was required to pay. Id. Attorney Bell later admitted that Bell & Hertler should have raised comparative negligence as a defense. Id. at n.2. After holding that no attorney-client relationship existed between Atlanta International and Bell & Hertler, the court held that Atlanta International could pursue a claim under an equitable subrogation theory, which the court saw as a more flexible solution. Id. at 297-98. Of equitable subrogation, the majority wrote:

> The doctrine is eminently applicable under the facts of this case. A rule of law expanding the parameters of the attorney-client relationship in the defense counsel-insurer context might well detract from the attorney's duty of loyalty to the client in a potentially conflict-ridden setting. Yet to completely absolve a negligent defense counsel from malpractice liability would not rationally advance the attorney-client relationship. Moreover, defense counsel's immunity from suit by the insurer would place the loss for the attorney's misconduct on the insurer. The only winner produced by an analysis precluding liability would be the malpracticing attorney. Equity cries out for application under such circumstances.

Id. at 298.

For the reasons discussed in these cases, I would allow an insurer to bring an action under equitable subrogation.  (In a similar vein, I note that Judge Tinder predicted that our Court would allow an excess insurer to bring an action against a primary insurer under equitable subrogation for negligent defense of a claim against the insured.  Phico Ins. Co. v. Aetna Cas. and Sur. Co. of Am., 93 F. Supp. 2d 982, 990 (S.D. Ind. 2000).)

Any claim that an insurance company would bring against its insured's attorney would have to be prosecuted without access to any confidential client information of any kind whatso-ever.  But I would not close the courthouse door to an insurance company that is willing and able to do so.