# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Sentry Select Insurance Company, Plaintiff,

v.

Maybank Law Firm, LLC, and Roy P. Maybank, Defendants.

Appellate Case No. 2016-001351

---

## CERTIFIED QUESTIONS

---

ON CERTIFICATION FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
J. Michelle Childs, United States District Court Judge

---

Opinion No. 27806
Heard December 13, 2018 – Filed March 6, 2019
Refiled March 11, 2019

---

## FIRST QUESTION ANSWERED

---

Daryl G. Hawkins, Law Office of Daryl G. Hawkins, LLC, of Columbia, for Plaintiff.

David W. Overstreet, Michael B. McCall, and Steven R. Kropski; Earhart Overstreet, LLC; all of Charleston; for Defendants.

---

**JUSTICE FEW:** Sentry Select Insurance Company brought a legal malpractice lawsuit in federal district court against the lawyer it hired to defend its insured in an automobile accident case. The district court requested we answer the following questions:

(1)     Whether an insurer may maintain a direct malpractice action against counsel hired to represent its insured where the insurance company has a duty to defend?

(2)     Whether a legal malpractice claim may be assigned to a third-party who is responsible for payment of legal fees and any judgment incurred as a result of the litigation in which the alleged malpractice arose?

The answer to question one is "yes," under the limitations we will describe below.[1] We decline to answer question two.

## I.     Background

Sentry Select hired Roy P. Maybank of the Maybank Law Firm to defend a trucking company Sentry Select insured in a personal injury lawsuit in state court.  Maybank failed to timely answer requests to admit served by the plaintiff pursuant to Rule 36(a) of the South Carolina Rules of Civil Procedure.  Seven months later, Maybank filed a motion seeking additional time to answer the requests, which the circuit court held under advisement until the parties completed mediation.  Sentry Select claims that because of Maybank's failure to timely answer the requests, and the likelihood the circuit court would deem them admitted,[2] it settled the case for $900,000, and

---

[1] We originally decided this certified question in an opinion filed May 30, 2018. *Sentry Select Ins. Co. v. Maybank Law Firm, LLC*, Op. No. 27806 (S.C. Sup. Ct. filed May 30, 2018) (Shearouse Adv. Sh. No. 22 at 31). The defendants filed a petition for rehearing, which we granted, thereby vacating the May 30, 2018 opinion. We now substitute this opinion to answer the certified question.

[2] *See Scott v. Greenville Housing Authority*, 353 S.C. 639, 646, 579 S.E.2d 151, 154 (Ct. App. 2003) (stating "our courts have repeatedly found that failure to respond to requests for admissions deems matters contained therein admitted for trial"); *but see* 353 S.C. at 652, 579 S.E.2d at 158 (finding the specific error to be the trial court abused its discretion "in failing to address the prejudice that would be suffered by" the party seeking relief from his failure to answer); 8B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2257 (3d ed. 2010 & Supp. 2018) ("The court has power to allow additional time for a response to a request for admissions even after the time fixed by the rule has expired.  Thus the court can, in its discretion, permit what would otherwise be an untimely answer.").

claims Maybank previously represented to Sentry Select it could settle in a range of $75,000 to $125,000.

Sentry Select then filed this lawsuit in federal district court against Roy Maybank and Maybank Law Firm alleging a variety of theories, including negligence. The district court certified these two questions to us pursuant to Rule 244 of the South Carolina Appellate Court Rules.

## II.  Analysis—Question One

When an insurer hires an attorney to represent its insured, an attorney-client relationship arises between the attorney and the insured—his client. Pursuant to that relationship, the attorney owes the client—not the insurer—a fiduciary duty. *See Spence v. Wingate*, 395 S.C. 148, 158-59, 716 S.E.2d 920, 926 (2011) (stating "an attorney-client relationship is, by its very nature, a fiduciary relationship"). Nothing we say in this opinion should be construed as permitting even the slightest intrusion into the sanctity of the attorney-client relationship, nor to diminish to any degree the fiduciary responsibilities the attorney owes his client.

However, an insurance company that hires an attorney to represent its insured is in a unique position in relation to the resulting attorney-client relationship. Pursuant to the insurance contract, the insurer has a duty to defend its insured, and must compensate the attorney for his time in defense of his client. If the insured settles or has judgment imposed against him, the insurance contract ordinarily requires the insurer to pay the settlement or judgment. Many insurance contracts provide the insurer has a right to investigate and settle claims as a representative of its insured. Finally, the insurer's right to settle must be exercised in good faith, and that duty of good faith requires the insurer to act reasonably in protecting the insured from liability in excess of the policy limits. *Tiger River*[3] *Pine Co. v. Maryland Cas. Co.*, 163 S.C. 229, 234-35, 161 S.E. 491, 493-94 (1931).

---

[3] Three tributaries of the Tyger River flow from the feet of the mountains of Greenville and Spartanburg Counties before coming together in lower Spartanburg County east of Woodruff. From there the Tyger River flows through Union County, forming the border of Union and Newberry Counties for a short distance before entering the Broad River. In 1928, Erwin Chesser injured his arm at his job with Tyger River Pine Co. in Union County. A series of lawsuits arising from that injury and a jury verdict in Chesser's favor in excess of the limits of Tyger River Pine's liability policy with Maryland Casualty Co. made it to this Court three times, as a

Because of the insurance company's unique position, we hold the answer to question one is yes, an insurer may bring a direct malpractice action against counsel hired to represent its insured. However, we will not place an attorney in a conflict between his client's interests and the interests of the insurer. Thus, the insurer may recover only for the attorney's breach of his duty to his client, when the insurer proves the breach is the proximate cause of damages to the insurer. If the interests of the client are the slightest bit inconsistent with the insurer's interests, there can be no liability of the attorney to the insurer, for we will not permit the attorney's duty to the client to be affected by the interests of the insurance company. Whether there is any inconsistency between the client's and the insurer's interests in the circumstances of an individual case is a question of law to be answered by the trial court.

Our decision is consistent with established policy. In *Fabian v. Lindsay*, 410 S.C. 475, 491, 765 S.E.2d 132, 141 (2014), analyzing the individual circumstances of that case, we held an attorney can be liable for breach of duty resulting in damages to a third party. We relied in part on our conclusion that not recognizing such liability "would . . . improperly immunize this particular subset of attorneys from liability for their professional negligence." 410 S.C. at 490, 765 S.E.2d at 140; *see also* 410 S.C. at 493, 765 S.E.2d at 142 (Pleicones, J., concurring in part and dissenting in part) (relying on "public policy considerations" to support his concurrence in the imposition of liability).

The deterrent purpose of tort law is also served by our decision.

> One reason for making a defendant liable in tort for injuries resulting from a breach of his duty is to prevent such injuries from occurring. Underlying this justification is the assumption that potential wrongdoers will avoid wrongful behavior if the benefits of that behavior are outweighed by the costs imposed by the payment of damages . . . .

---

result of which there became the "Tyger River Doctrine." *See, e.g.*, *Williams v. Riedman*, 339 S.C. 251, 269, 529 S.E.2d 28, 37 (Ct. App. 2000). Unfortunately, this Court spelled the name of the river incorrectly in the caption of one of those three—the cited opinion. After all these years, we officially apologize for our error.

F. Patrick Hubbard and Robert L. Felix, *The South Carolina Law of Torts* 7 (4th ed. 2011); *see also* Rule 1.8 cmt. 14, RPC, Rule 407, SCACR, (stating the reason an attorney cannot prospectively limit his liability to a client is because doing so is "likely to undermine competent and diligent representation").

Our decision is also consistent with the rule adopted by the majority of states that have considered the issue. *See generally* Ronald E. Mallen, 4 *Legal Malpractice* § 30.39 (2019 ed.) (listing twenty-four states in which such an action is allowed under appropriate circumstances, and two states in which it is not allowed); William H. Black Jr. & Sean O. Mahoney, *Legal Bases for Claims by Liability Insurers Against Defense Counsel for Malpractice*, 35 The Brief 33, 33 (Winter 2006) ("Although the issue is relatively new to American jurisprudence, the majority of states permit a liability insurer to sue defense counsel for negligent representation in an underlying action."); *General Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F. Supp. 2d 951, 955-56 (E.D. Va. 2005) (stating "courts of other jurisdictions generally recognize such a cause of action"); *see also* 7A C.J.S. *Attorney & Client* § 386 (2015) ("When, pursuant to insurance policy obligations, an insurer hires and compensates counsel to defend an insured, provided that the interests of the insurer and insured are not in conflict, the retained attorney owes a duty of care to the insurer[4] which will support its independent right to bring a legal malpractice action against the attorney for negligent acts committed in the representation of the insured.").

Maybank argues our decision will destroy the sanctity and integrity of the attorney-client relationship by: (1) dividing the loyalty of the attorney between the client and the insurer; (2) threatening the attorney-client privilege; (3) allowing the insurer to direct the litigation even though the insured is the client; and (4) opening the door to other non-clients to sue attorneys for legal malpractice. We have the additional concern of ensuring there can be no double-recovery against an attorney.

In response to these concerns, we emphasize that the loyalties of the attorney may not be divided. *See Fabian*, 410 S.C. at 490, 765 S.E.2d at 140 ("It is the breach of the attorney's duty to the client that is the actionable conduct in these cases."). The duties an attorney owes his client are well-established according to law, and this opinion does nothing to change that. *See generally* Rule 407, SCACR (South Carolina Rules of Professional Conduct). The attorney owes no separate duty to the

---

[4] To be clear, the cause of action we recognize today is based on the attorney's duty to the client, not to the insurer.

insurer. We do not recognize what the dissent calls the "dual attorney-client relationship."

As to Maybank's second concern, we emphasize the insurer may not intrude upon the privilege between the attorney it hires and the attorney's client—the insured. We are confident the trial courts of this State are well-equipped to protect the attorney-client privilege according to law if any dispute over it arises.

As to Maybank's third concern, the attorney's control of litigation involving an insured client is also governed by established law. *See, e.g.*, Rule 1.8(f), RPC, Rule 407, SCACR ("A lawyer shall not accept compensation for representing a client from one other than the client unless: . . . (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; . . . ."); Rule 5.4(c), RPC, Rule 407, SCACR ("A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."). Our opinion does nothing to change these principles.

As to Maybank's "opening the door" concern, we expressly limit the scope of this opinion so that it does nothing beyond what it expressly states. Next, there may be no double recovery. If a danger of double recovery arises, we are confident our trial courts can handle it. *See* Rule 17(a), SCRCP ("Every action shall be prosecuted in the name of the real party in interest.").

As a final limitation on an insurer's right to bring an action against the lawyer it hires to represent its insured, the insurer must prove its case by clear and convincing evidence. The clear and convincing standard is consistent with the result of *Fabian*. *See* 410 S.C. at 493, 765 S.E.2d at 142 (Kittredge, J., concurring) (stating "the burden of proof should be the clear and convincing standard"); 410 S.C. at 494, 765 S.E.2d at 142 (Pleicones, J., concurring in part and dissenting in part) (stating "I would require a beneficiary asserting such a legal malpractice claim to prove by clear and convincing evidence that the attorney breached the duty," joined by Toal, C.J.).

In this case, there appears to be no risk our decision will place the attorney in a conflict position or create any divided loyalty. The attorney's duty to his client includes the obligation to timely respond to requests to admit. The fact that an insurance company may suffer financial loss from an attorney's negligence in failing to timely respond to the requests, and our recognition that the insurer may sue the attorney to recover this loss after settling the underlying case to protect the interests of the insured, do not in any way affect the attorney's duty to his client. We stress,

however, the district court should independently make this determination based on all the facts and circumstances of the case. As to the other concerns, we see no basis on the limited record before us to find that any of the limitations we impose will be violated in this factual scenario. If some other fact or circumstance in the record before the district court raises such a concern, the district court is fully capable of addressing it.

The dissent offers several points of criticism we feel we should address. First, the fact that we do not specifically identify a theory of recovery—such as third party beneficiary theory or equitable subrogation—is fair criticism. This is a deliberate choice, however, designed to preserve the attorney's fiduciary allegiance to his client with no interference from the insurer. If permitting liability against the attorney on the basis of a duty to the client—not a duty to the plaintiff insurer—appears awkward, we accept that awkwardness as adequately counterbalanced by the benefit of preserving the sanctity of the attorney-client relationship.

Second, the dissent argues we have ignored the *Fabian* "factors." However, we specifically rely on the fifth factor—the policy of preventing future harm—in our discussion of the deterrent purpose of tort law, and with our citation to the admonition in *Fabian* that we should not "improperly immunize [a] particular subset of attorneys from liability for their professional negligence." 410 S.C. at 490, 765 S.E.2d at 140. We also specifically discuss the sixth factor—the need to avoid an undue burden on the profession—by putting so much emphasis on not creating divided loyalties. The third factor warrants no discussion because its applicability in this category of case is obvious. When an attorney's breach of his duty to his client proximately causes a larger settlement or judgment in a case in which the insurer must pay, the harm to the plaintiff insurer is not merely "foreseeable"; it is inevitable.

The other *Fabian* factors are less applicable here, which brings up the reason we do not dwell on them as the dissent suggests we should. In *Lucas v. Hamm*, 364 P.2d 685 (Cal. 1961), the decision we primarily relied on in *Fabian* for the use of the factors, the Supreme Court of California explained the purpose for their use. The court stated "the determination whether *in a specific case* the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors." 364 P.2d at 687 (emphasis added); *see also Beacon Residential Cmty. Ass'n v. Skidmore, Owings & Merrill LLP*, 327 P.3d 850, 857 (Cal. 2014) (stating "the application of these factors necessarily depends on the circumstances of each case," relying on *Biakanja v. Irving*, 320 P.2d 16, 19 (Cal. 1958), which we indicated in *Fabian* was the decision the California Supreme Court relied on in

deciding *Lucas*, 410 S.C. at 484, 765 S.E.2d at 137). In *Fickett v. Superior Court of Pima County*, 558 P.2d 988 (Ariz. Ct. App. 1976), another case we relied on in *Fabian*, the court similarly recognized the factors are for use in a specific case-by-case analysis, 558 P.2d at 990, and in particular in cases in which a person's liability to the beneficiary of an estate is in question, 558 P.2d at 989-90. In fact, only one of the many cases cited by the dissent regarding the importance of the *Fabian*/*Lucas* factors involves the liability of an attorney to an insurer. *See supra* notes 6 and 7. That case, *Atlanta International Insurance Co. v. Bell*, 475 N.W.2d 294 (Mich. 1991), does not even mention the *Fabian*/*Lucas* factors, but does impose liability against retained counsel—as we do—when the "case does not present a conflict between the interests of the insurer and the public policy of ensuring undiluted loyalty by counsel to the insured." 475 N.W.2d at 297.

### III.    Question Two

As to question two—whether a legal malpractice claim may be assigned to a third party—we decline to answer the question. We are satisfied that our answer to question one renders the second question not "determinative of the cause then pending in the certifying court," Rule 244(a), SCACR, and thus it is not necessary for us to answer question two, *see* Rule 244(f), SCACR (providing we "may rescind [our] agreement to answer a certified question"); *see also Thomas v. Grayson*, 318 S.C. 82, 89, 456 S.E.2d 377, 381 (1995) (declining to answer a certified question because the Court's analysis of the other certified questions was dispositive).

**KITTREDGE and JAMES, JJ., concur.  BEATTY, C.J., dissenting in a separate opinion in which HEARN, J., concurs.**

**CHIEF JUSTICE BEATTY:** I respectfully dissent. I would answer both questions in the negative and hold that an insurer may not maintain a direct legal malpractice claim against an insured's hired counsel and that a legal malpractice claim may not be assigned to a third party responsible for any judgment and legal fees. In deciding otherwise, the majority provides the insurer a windfall at the cost of preserving the attorney-client relationship, which is a decision I cannot support.

**I.     May an insurer maintain a direct malpractice action against counsel hired to represent its insured where the insurance company has a duty to defend?**

Over a century ago, the United States Supreme Court held that, absent fraud, collusion, or similar circumstances, only those in privity with an attorney may pursue a legal malpractice claim. *Nat'l Sav. Bank v. Ward*, 100 U.S. 195, 205-07 (1879). South Carolina followed suit and required the plaintiff to prove the existence of an attorney-client relationship in order to establish privity. *Fabian v. Lindsay*, 410 S.C. 475, 483, 765 S.E.2d 132, 136 (2014) ("Privity for legal malpractice has traditionally been established by the existence of an attorney-client relationship."); *Am. Fed. Bank, FSB v. No. One Main Joint Venture*, 321 S.C. 169, 174, 467 S.E.2d 439, 442 (1996) ("Before a claim for malpractice may be asserted, there must exist an attorney-client relationship.").

The purpose of the attorney-client relationship requirement is "to ensure the inviolability of the attorney's duty of loyalty to the client." *Atlanta Int'l Ins. Co. v. Bell*, 475 N.W.2d 294, 296 (Mich. 1991); *see McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 545 (Minn. 2008) ("If an attorney were to owe a duty to a nonclient, it could result in potential ethical conflicts for the attorney and compromise the attorney-client relationship, with its attendant duties of confidentiality, loyalty, and care."); *Bovee v. Gravel*, 811 A.2d 137, 140 (Vt. 2002) ("The requirement of attorney-client privity to maintain a malpractice action 'ensure[s] that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation.'" (quoting *Barcelo v. Elliot*, 923 S.W.2d 575, 578-79 (Tex. 1996))). Thus, by limiting the potential plaintiffs in a legal malpractice action to the attorney's clients, courts have, in effect, determined the concerns surrounding the preservation of the attorney-client relationship outweigh the collateral or peripheral interest of third parties.

In *Fabian v. Lindsay*, 410 S.C. 475, 765 S.E.2d 132 (2014), however, we created an exception to this longstanding requirement when we recognized causes of action in tort and contract for third-party beneficiaries of an existing estate

planning document against an attorney whose drafting error defeats or diminishes the client's intent. In doing so, we explained:

> Recognizing a cause of action is not a radical departure from the existing law of legal malpractice that requires a lawyer-client relationship, which is equated with privity and standing. Where a client hires an attorney to carry out his intent for estate planning and to provide for his beneficiaries, there *is* an attorney-client relationship that forms the basis for the attorney's duty to carry out the client's intent. This intent in estate planning is directly and inescapably for the benefit of the third-party beneficiaries. Thus, imposing an avenue for recourse in the beneficiary, where the client is deceased, is effectively enforcing the *client's intent*, and the third party is in privity with the attorney.

*Id.* at 490, 765 S.E.2d at 140. The Court also acknowledged that "[i]n these circumstances, retaining strict privity in a legal malpractice action for negligence committed in preparing will or estate documents would serve to improperly immunize this particular subset of attorneys from liability for their professional negligence." *Id*.

Today, the majority creates another exception to the attorney-client relationship requirement to allow an insurer to pursue a cause of action against counsel hired to represent the insured. In doing so, the majority asserts its decision is "consistent with the rule adopted by the majority of states that have considered the issue." This is somewhat misleading. While a majority of jurisdictions *may* permit an insurer to pursue a legal malpractice action against hired counsel, it is important to note that most of those jurisdictions appear to do so on the belief that a dual attorney-client relationship exists between the insurer, insured, and counsel, which is a belief the majority does not share.[5]

---

[5] Under the "dual attorney-client relationship," the attorney has two clients, in this context, the insured and the insurer. Consequently, in those jurisdictions that recognize this type of relationship, no exception to the privity requirement need be created for an insurer to bring a direct legal malpractice claim against hired counsel under certain circumstances because the insurer, as a client, is already in privity with the attorney. However, that is not the rule in this state. Moreover, as at least one commentator has recognized, some states that have initially recognized such a rule have moved away from doing so in light of the conflicts it poses to the insured. *See* Amber Czarnecki, *Ethical Considerations Within the Tripartite Relationship of Insurance Law - Who Is the Real Client?,* 74 Def. Couns. J. 172, 176 (2007)

Those jurisdictions that allow an insurer to pursue a claim against hired counsel under a premise other than the dual attorney-client relationship have done so using a number of approaches grounded in contract, equity, and tort law. *See, e.g.*, *Paradigm Ins. Co. v. Lagerman Law Offices, P.A.*, 24 P.3d 593, 601-02 (Ariz. 2001) (holding an insurer may pursue a legal malpractice claim against hired counsel because counsel "has a duty to the insurer arising from the understanding that [his] services are ordinarily intended to benefit both insurer and insured when their interests coincide"); *Hartford Ins. Co. v. Koeppel*, 629 F.Supp.2d 1293 (M.D. Fla. 2009) (granting insurer standing to sue under a third-party beneficiary theory); *Atlanta Int'l Ins. Co. v. Bell*, 475 N.W.2d 294 (Mich. 1991) (declining to recognize the insurer as a client, but nevertheless allowing the insurer to pursue an action against hired counsel under the doctrine of equitable subrogation).

The majority opinion is devoid of any reference to these approaches. It simply holds that, because of the insurer's "unique position," the insurer "may recover . . . for the attorney's breach of his *duty to* [*the insured*]." I take issue with the majority's holding. First, I do not agree with the majority that being contractually obligated to pay litigation costs places the insurer in a position sufficient to waive the privity requirement. Second, I am concerned about the manner in which an insurer can pursue a legal malpractice action against hired counsel after today's decision.

According to the majority, an insurer's cause of action against hired counsel is predicated on a breach of the duty owed *to the insured*, not on a breach of a duty owed *to the insurer*. At first blush, the cause of action available to the insurer sounds in tort. However, unlike other jurisdictions that have recognized a cause of action in tort for insurers against hired counsel, the majority declines to recognize a separate duty of care owed to the insurer. Thus, by limiting the insurer's recovery to the extent hired counsel breached its duty to the insured and prohibiting double recovery, the action is more akin to equitable subrogation or an assignment of an insured's legal malpractice claim. As will be discussed, I would find such an action, under either theory, contrary to the public policy of this state.

I turn now to address Sentry's specific arguments in support of recognizing a direct action against hired counsel.

---

(recognizing that "the judicial trend" is moving toward recognizing the insured as the sole client out of concern that recognizing the insurer as a client would weaken the attorney's loyalty to the insured).

## 1.  Third-Party Beneficiary of Contract Theory

First, Sentry argues this Court should allow insurers to bring claims against hired counsel under a third-party beneficiary of contract theory.[6]  I disagree.

The contract at issue here is the contract of representation between the insured and hired counsel.  Therefore, to pursue a third-party beneficiary claim, an insurer must show the insured and hired counsel intended, by virtue of the contract, "to create a direct, rather than an incidental or consequential, benefit to" the insurer. *Bob Hammond Constr. Co. v. Banks Constr. Co.*, 312 S.C. 422, 424, 440 S.E.2d 890, 891 (Ct. App. 1994).  That, however, is not the case.

There is no question that when an insured purchases an insurance policy that gives rise to the contract of representation, the insured is doing so with the understanding that his interests, not those of the insurer, will be represented should an issue arise requiring legal representation.  Although the insurer pays for the legal representation and may share similar interests with the insured, any benefit to the insurer derived therefrom is incidental to the contract of representation.  In sum, the insurer is merely performing its contractual duty to the insured.  Consequently, I would find that an insurer cannot bring a breach of contract action as a third-party beneficiary because it is not the intended beneficiary of the contract of representation between the insured and hired counsel.

## 2.  Negligence

Next, Sentry asserts an insurer should be able to proceed against hired counsel under a theory of negligence.  I disagree.

In *Fabian*, this Court explained the determination of whether an attorney may be liable in tort to a plaintiff not in privity "is a matter of policy and involves the balancing of" the following factors:  (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the policy of preventing future harm; and (6) whether the recognition of liability would impose

---

[6]  A third-party beneficiary is someone "who is not a party to a contract but who would benefit from its performance."  Melvin Aron Eisenberg, *Third-Party Beneficiaries*, 92 Colum. L. Rev. 1358, 1359 (1992).

an undue burden on the profession.[7]  *Id*. at 485, 765 S.E.2d at 137-38 (citing *Lucas v. Hamm*, 364 P.2d 685, 687-88 (Cal. 1961) (*en banc*)).  After careful consideration, I find none of these factors weigh in the insurer's favor.

Given the significance of the purpose of the representation, I believe the first factor, the extent to which the transaction was intended to affect, or benefit,[8] the plaintiff, should be weighed more heavily than the others.[9]  As discussed, the

_____

[7]  Interestingly, although the majority recognizes a cause of action in tort, the majority makes no reference to these factors in doing so.

[8]  I interpret this factor as requiring the representation do more than simply affect the plaintiff.  Similar to other states that have adopted the *Lucas* test or something similar, I believe this factor weighs in favor of the plaintiff only if the client intended for the lawyer's services to benefit that plaintiff.  *See Blair v. Ing*, 21 P.3d 452, 466 (Haw. 2001) (interpreting the first *Lucas* factor as requiring the principal purpose of the representation to be for the benefit of the plaintiff); *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 628 (Mo. 1995) (*en banc*) (determining the first factor "weighs in favor of a legal duty by an attorney where the client **specifically intended** to benefit the plaintiffs").  It has also been observed that, since deciding *Lucas*, California has imposed a duty on an attorney to a plaintiff only where, *inter alia*, the attorney and client intended the representation directly benefit the plaintiff.  *Templeton v. Catlin Specialty Ins. Co.*, 612 F. App'x 940, 967-68 (10th Cir. 2015).  Thus, with respect to the first factor, the question is not whether the plaintiff was affected by the representation, but whether the client intended for the representation to be for the plaintiff's benefit.

[9]  Indeed, some states have gone so far as to make this factor a threshold requirement for a plaintiff pursing a claim against counsel in tort.  *See McIntosh Cnty. Bank v. Dorsey & Whitney, LLP*, 745 N.W.2d 538, 547 (Minn. 2008) (finding "that in order for a third party to proceed in a legal malpractice action, that party must be a direct and intended beneficiary of the attorney's services"); *Trask v. Butler*, 872 P.2d 1080, 1084 (Wash. 1994) (*en banc*) (holding "under the modified multi-factor balancing test, the threshold question is whether the plaintiff is an intended beneficiary of the transaction to which the advice pertained").  Additionally, at least one state, which has not adopted the *Lucas* test, has nevertheless made this a requirement for allowing a third party to pursue a legal malpractice claim in tort.  *See Pelham v. Griesheimer*, 440 N.E.2d 96, 100 (Ill. 1982) (concluding "for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and

purpose of the representation between counsel and the insured is not intended to benefit the insurer.

Moreover, to be applicable, factors two, three, and four each necessitate the plaintiff suffer some type of harm or injury. However, I am unable to identify any harm suffered by an insurer when the case settles within the agreed-upon policy limits. In those cases, the insurer is merely fulfilling an agreed-upon promise between it and the insured. The insurer established a price to cover the risk and the insured paid it. Understandably, the insurer is unhappy when it pays more than it wanted to, but that is the risk that it took and it is the nature of the business.

As to the fifth factor, the policy concerns in preventing future harm are not as great as they are in the will-drafting context. In *Fabian*, we acknowledged that but for an exception to the privity requirement, an attorney would not be held accountable for the negligence in the preparation of a will or estate planning document. *Fabian*, 410 S.C. at 490, 765 S.E.2d at 140. However, here, the insured maintains the option of bringing a malpractice claim, which upholds the policy goals of preventing future harm by maintaining accountability and deterring further negligence.

Regarding the final factor, recognizing a cause of action in tort for an insurer against the insured's hired counsel may pose an undue burden to the profession by allowing multiple parties to pursue legal malpractice claims against hired counsel. More significantly, for reasons that will be discussed, such a cause of action could pose an undue burden to the attorney-client relationship by negatively affecting the duty of loyalty owed to the client, which is precisely what the privity requirement was intended to prevent. *See Atlanta Int'l Ins. Co.*, 475 N.W.2d at 296 ("The essential purpose of the general rule against malpractice liability from third-parties is . . . to prevent conflicts from derailing the attorney's unswerving duty of loyalty of representation to the client.").

The principal concern in allowing third parties to pursue legal malpractice claims against an attorney is that, when a conflict arises between the client and third party, the attorney may carry out the representation in a manner inconsistent with the best interests of the client. *See id*. ("Allowing third-party liability generally would detract from the attorney's duty to represent the client diligently and without reservation."); Restatement (Third) of the Law Governing Lawyers § 51 cmt. b

---

intent of the attorney-client relationship itself was to benefit or influence the third party").

(2000) ("Making lawyers liable to nonclients . . . could tend to discourage lawyers from vigorous representation."). This is of special concern in the context here given the heightened risk of conflict due to the often diverging interests between the insured and insurer and the employment relationship between insurer and hired counsel.

Unlike the situation in *Fabian*, the purpose of the representation here is not for the benefit of the third party pursuing the legal malpractice claim. Here, the third party's purpose and interests routinely diverge from those of the client. As one court stated:

> [t]here can be no doubt that actual conflicts between insured and insurer are quite common and that the potential for conflict is present in every case. Conflicts may arise over the existence of coverage, the manner in which the case is to be defended, the information to be shared, the desirability of settling at a particular figure or the need to settle at all, and an array of other factors applicable to the circumstances of a particular case.

*Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 24 P.3d 593, 597 (Ariz. 2001) (*en banc*).

In addition to the increased risk of conflict, the employment relationship between the insurer and insured's hired counsel heightens the concern that the attorney may make decisions in a manner more preferable to the third party than the client. *See Atlanta Int'l Ins. Co.*, 475 N.W.2d at 298 (acknowledging "[t]he possibility of conflict unquestionably runs against the insured, considering that defense counsel and the insurer frequently have a longstanding, if not collegial, relationship"); 4 Ronald E. Mallen, *Legal Malpractice* § 30:53, at 333 (2017 ed.) ("A risk is that the attorney may not recognize [a] conflict or may favor the interests of the insurer. The lawyer may be tempted to help the [insurer], who pays the bills, who will send further business, and with whom long-standing personal relationships have developed."); Mallen, *supra*, § 30:57, at 346-47 ("During litigation, issues may arise that could influence the attorney to choose sides. When abuses have occurred, most reported decisions have involved an attorney, who has favored . . . the insurer."); Robert M. Wilcox & Nathan M. Crystal, *Annotated South Carolina Rules of Professional Conduct*, at 136 (2013 ed.) ("Whenever a person other than the client pays the lawyer, there exists a risk that the interests of the person paying the fees may interfere with the lawyer's duty to exercise independent professional judgment on behalf of the client.").

Sentry contends these concerns are not present in this case because it undoubtedly shared a mutual interest with the insured in counsel timely filing answers to the requests to admit. Although that may be true, certified questions are not based on the narrow facts of the case from which the questions arise. While there may be no conflict in allowing Sentry to bring a legal malpractice action *in this case*, the same may not be true in later cases involving challenges to other decisions made in an attorney-client relationship of which the insurer was not in privity. *See* 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7:8, at 802-03 (2014 ed.) (noting "even if an implied duty does not interfere with fiduciary obligations in a given case, it may do so in other cases under different facts. For that reason, policy considerations are not developed on an *ad hoc* basis, but from a broader perspective concerning the potential adverse effects on future relationships").

Therefore, for the reasons stated, I would find the *Fabian* balancing test weighs against allowing an insurer to bring a cause of action in tort for legal malpractice against counsel hired to represent its insured.[10]

Based on the foregoing, I would answer the first certified question in the negative and hold an insurer may not maintain a direct claim against an insured's hired counsel. I acknowledge that, under this approach, the insurer would have to assume the risk concomitant with the attorney it hires to represent its insured. I also recognize that, in those cases in which a negligent attorney resolves a claim within the policy limits, it is unlikely the insured will bring a legal malpractice action. As a result, the attorney may avoid liability for his negligence. Although troubling, I believe my concerns in expanding the privity exception to permit an insurer to pursue an action against hired counsel outweigh a holding to the contrary.[11] Moreover,

---

[10] Sentry also asks this Court to find hired counsel owes a duty of care to the insurer. However, such a duty of care would necessarily sound in negligence. As discussed, I would hold Sentry and other similarly situated entities do not meet *Fabian*'s balancing test. Nevertheless, even if the recognition of such a duty of care could exist harmoniously with *Fabian*'s balancing test, I believe the previously discussed concerns in allowing an insurer to bring a direct legal malpractice claim would prohibit this Court from recognizing a duty.

[11] Other courts also favor the preservation of the sanctity of the attorney-client relationship over the economic interests of the insurer. *See, e.g., State Farm Fire & Cas. Co. v. Weiss*, 194 P.3d 1063, 1069 (Colo. App. 2008) (precluding an insurer from pursuing an equitable subrogation claim against counsel, recognizing that

while an attorney may not be held liable for his negligence in some circumstances, the attorney could still be held accountable for his conduct in a disciplinary proceeding before this Court.

## II. May a legal malpractice claim be assigned to a third party who is responsible for payment of legal fees and any judgments incurred as a result of the litigation in which the alleged malpractice arose?

Sentry contends this Court should answer the second certified question "yes" and hold a legal malpractice claim may be assigned to a third party responsible for the payment of legal fees and any judgment incurred. I disagree.

In *Skipper v. ACE Property and Casualty Insurance Company*, 413 S.C. 33, 38, 775 S.E.2d 37, 39 (2015), this Court held a legal malpractice claim could not be assigned between adversaries in litigation in which the alleged legal malpractice arose. The Court based its holding, in part, on the potential threat to the attorney-client relationship. *Id*. at 37, 775 S.E.2d at 38-39. The relationship in *Skipper* is different than that here because the insurer and insured are presumably not adversaries. However, as discussed in the previous section, the threat to the attorney-client relationship still remains in allowing a third party responsible for the payment of legal fees to pursue a cause of action challenging the decisions made in an attorney-client relationship to which he was not in privity.

To be sure, in denying the assignment of legal malpractice claims outright, the majority of courts base their holding on the same policy considerations that form the basis of my position to deny an insurer the right to bring a direct legal malpractice claim. *See, e.g.*, *Goodley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83, 87 (Cal. Ct. App. 1976) ("It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should

---

while "insurance companies and ultimately the public will pay the cost, or the bulk of the cost, of this burden, protecting every attorney-client relationship must take precedence over allowing lawsuits against attorneys whose clients do not want to sue but their subrogees do"); *Querrey & Harrow, Ltd. v. Transcon. Ins. Co.*, 861 N.E.2d 719, 724 (Ind. Ct. App. 2007) (declining to allow an insurer to bring a legal malpractice claim against hired counsel and dismissing those jurisdictions holding to the contrary; stating, "we do not agree with those jurisdictions that hold the possibility of the attorney garnering a windfall by not having to defend against his or her malpractice outweighs the sanctity of the attorney-client relationship").

not be subject to assignment."); *Christison v. Jones*, 405 N.E.2d 8, 11 (Ill. App. Ct. 1980) (prohibiting the assignment of legal malpractice claims, holding "the decision as to whether a malpractice action should be instituted should be a decision peculiarly for the client to make" given, in part, "the personal nature of the duty owed by an attorney to his client"); *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 342 (Ind. 1991) (concluding legal malpractice claims cannot be assigned based on, *inter alia*, the need to preserve the sanctity of the attorney-client relationship, including the duty of loyalty and the duty of confidentiality, which would be weakened under the policy of assigning legal malpractice claims). *See generally* Tom W. Bell, *Limits on the Privity and Assignment of Legal Malpractice Claims*, 59 U. Chi. L. Rev. 1533, 1544-45 (1992) (recognizing that "relaxing the privity requirement and allowing assignability stand or fall by the same arguments" because the policy concerns underlying the decision to prohibit a third party from asserting a direct malpractice claim also underlie the decision to prohibit the assignment of a legal malpractice claim to a third party).[12]

Consequently, I would also answer the second question in the negative and hold a legal malpractice claim may not be assigned to a third party responsible for any judgment and legal fees.

**HEARN, J., concurs.**

---

[12] Sentry further submits this Court should allow insurers to pursue a claim against hired counsel under the doctrine of equitable subrogation. I disagree. "In the context of the insured-insurer relationship, the doctrine of equitable subrogation provides that an insurer who pays a loss is thereby placed by operation of law in the position of its insured so that the insurer may recover from a third-party tortfeasor whose negligence or wrongful act caused the loss." Dale Joseph Gilsinger, Annotation, *Right of Insurer to Assert Equitable Subrogation Claim Against Attorney for Insured on Grounds of Professional Malpractice*, 50 A.L.R. 6th 53, 63 (2009). The concerns surrounding equitable subrogation in this context are similar to the concerns surrounding the assignment of legal malpractice claims. *See Nat'l Union Fire Ins. Co. v. Salter*, 717 So. 2d 141, 142 (Fla. Dist. Ct. App. 1998) (recognizing the same public policy reasons advanced for prohibiting the assignment of legal malpractice claims "apply and prohibit the subrogation of a legal malpractice claim"). Therefore, for the abovementioned reasons, I would also conclude that an insurer may not bring a claim against hired counsel under equitable subrogation.