# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Karl & Terri Hager, Robert Singleton & Teresa Singleton, Jay & Susan Welborn, Erik Arnold, and Bowers Caravelle, LLC, derivatively and on behalf of Caravelle Resort Association, Inc. and on behalf of themselves and those similarly situated, Appellants,

v.

McCabe, Trotter & Beverly, P.C. and Gold Crown Management Company, Inc., Defendants,

Of Which McCabe, Trotter & Beverly, P.C. is the Respondent.

Appellate Case No. 2019-000413

————

Appeal From Horry County
Benjamin H. Culbertson, Circuit Court Judge

————

Opinion No. 5894
Heard December 9, 2021 – Filed February 23, 2022

————

## AFFIRMED IN PART AND REVERSED IN PART

————

Andrew Sims Radeker and Sarah Megan Larabee, both of Harrison, Radeker & Smith, P.A., of Columbia, for Appellants.

Andrew W. Countryman, of Countryman Law Firm, of Mount Pleasant, and Robert P. Wood, of Rogers Townsend, LLC, of Columbia, both for Respondent.

**HEWITT, J.:**  The appellants (the owners) in this case are several owners of condominium units at Caravelle Resort (Caravelle) in Myrtle Beach.  The circuit court dismissed their claims against a law firm that advised Caravelle's homeowners' association (the HOA) after a hurricane damaged Caravelle.  The owners argue dismissing their claims was error.

The owners attempted to bring two sets of claims against the law firm.  In one, the owners purported to sue on their own behalf for damage to personal property taken out of their individual units and stored in a parking garage during Caravelle's repair.  In the other, the owners professed to bring derivative claims against the firm on behalf of the HOA.  All of these claims share the common basis that the owners allege the firm gave the HOA inaccurate advice in helping the HOA navigate repairing Caravelle.

We hold the circuit court correctly dismissed the owners' personal claims but erred by dismissing the derivative claims.  Though we will identify concerns we have with the derivative claims, we see no defects in how they are pled, and we believe the prudent course is to exercise restraint instead of foreclosing the suit at the start of litigation.

## FACTS

Hurricane Matthew struck Myrtle Beach in October 2016.  It destroyed many windows in Caravelle and exposed several units to the elements.  McCabe, Trotter & Beverly, P.C. (the law firm) served as counsel for the HOA.  The HOA also worked with Gold Crown Management Company (Gold Crown).  At that time, Gold Crown was Caravelle's property manager.

The HOA took several actions to repair Caravelle after the storm.  Below, we have summarized the actions the owners claim were unlawful and taken on the advice of the law firm and/or Gold Crown.

First, the HOA began gutting and restoring the entire building and hired Delta Restoration, LLC (Delta) to perform these services.  Delta removed the personal property from the owners' units and placed everything in temporary storage in Caravelle's parking garage across the street.  The owners claim Caravelle's governing documents did not give the HOA power to remove belongings from units or gut the building without owner approval.  They further allege the HOA did not properly notify them it decided on this course of action and the HOA wrongfully

prevented them from visiting the property, assessing the situation, and judging the condition of their belongings for themselves.

Second, the HOA billed the owners for costs incurred in the repair process. Owners were charged a "content manipulation fee" to recover the costs of storing their belongings. They were also charged for a "soft goods package" to pay for replacing items like mattresses, linens, and upholstery that had been damaged during the hurricane or while in storage. The owners alleged they did not agree to the HOA storing their property or to having the property replaced. The owners further alleged the law firm and/or Gold Crown misrepresented the amount of damage done to their belongings and inflated the cost of the soft goods package. Finally, the owners claimed the firm and/or Gold Crown wrongfully pressured them into paying these charges by threatening actions against them.

Caravelle's master deed required property owners to purchase insurance covering the personal property, fixtures, decorations, and furnishings in their units. These policies were issued by Lloyd's of London (Lloyd's).

Two letters the law firm sent Lloyd's during the repair process are important to the issues here. First, the firm wrote Lloyd's that the parking garage would soon become an unsuitable location for the owners' belongings due to the spring and summer weather. The firm sent this letter several months after the storm. Nobody moved the owners' items from the parking garage. Then, at the end of summer, the firm warned Lloyd's that the HOA "and its members" would hold Lloyd's responsible for not protecting the property.

Though the law firm began both letters by noting it represented the HOA, the owners claim the firm was negotiating on their behalf because they, not the HOA, were the named insureds on the Lloyd's policies. The owners claim nothing authorized the HOA or its attorneys to handle issues related to their personal property.

The law firm also sent letters to the owners. In one, the firm explained the storm contaminated many "soft goods"—things like mattresses, linens, and upholstery. This letter discussed coverage under the Lloyd's policies and informed the owners the HOA would dispose of these items and replace them if owners authorized the HOA to do so. Later, the firm wrote individuals who had not authorized the HOA to handle the process and said those owners needed to either have the items moved by a moving company or permit the HOA to move them. This letter also said authorizing the HOA was likely the better option because the cost of moving the items would be at the owners' individual expense.

Though the firm sent these letters on behalf of the HOA, the owners claim the letters gave them legal advice and could have caused them to reasonably believe the firm represented them as individuals in addition to representing the HOA.

The law firm moved to dismiss the amended complaint under Rule 12(b)(6), SCRCP. The circuit court granted the motion in a Form 4 order after a hearing. The owners filed a motion to reconsider. The circuit court denied reconsideration but issued a formal order with detailed reasons for its earlier ruling. This appeal followed.

## ISSUE

Did the circuit court correctly find the owners' amended complaint failed to state any claims on which relief could be granted?

## STANDARD OF REVIEW

"On appeal from the dismissal of a case pursuant to Rule 12(b)(6), an appellate court applies the same standard of review as the trial court." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009). "That standard requires the Court to construe the complaint in a light most favorable to the nonmovant and determine if the 'facts alleged and the inferences reasonably deducible from the pleadings would entitle the plaintiff to relief on any theory of the case.'" *Id.* (quoting *Williams v. Condon*, 347 S.C. 227, 223, 553 S.E.2d 496, 499 (Ct. App. 2001)). If the facts and inferences would entitle the plaintiff to relief on any theory, then the grant of a motion to dismiss for failure to state a claim is improper. *Spence v. Spence*, 368 S.C. 106, 116, 628 S.E.2d 869, 874 (2006); *Clearwater Tr. v. Bunting*, 367 S.C. 340, 343, 626 S.E.2d 334, 335 (2006). "Furthermore, the complaint should not be dismissed merely because the court doubts the plaintiff will prevail in the action." *Spence*, 368 S.C. at 116-17, 628 S.E.2d at 874.

## PERSONAL CLAIMS

### A. Fraud and Conversion

The owners brought claims against the law firm for fraud and conversion. The circuit court correctly found these claims could not survive a motion to dismiss.

"[A]n attorney is immune from liability to third persons arising from the performance of his professional activities as an attorney on behalf of and with the knowledge of his client." *Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 528, 339 S.E.2d 887, 889 (Ct. App. 1986). An exception provides an attorney is not immune if "in addition to representing his client, . . . [the lawyer] breaches some

independent duty to a third person or acts in his own personal interest, outside the scope of his representation of the client." *Stiles v. Onorato*, 318 S.C. 297, 300, 457 S.E.2d 601, 602 (1995). Immunity also does not cover two unusual malpractice scenarios we will discuss later.

Immunity is a function of the fact that an attorney acting within the scope of representation is not acting on his or her own behalf, but on the client's behalf. In *Gaar*, for example, this court affirmed summary judgment on a malicious prosecution claim against two lawyers because the lawyers "acted solely in their capacity as attorneys" when they sued the plaintiff for their client. 287 S.C. at 529, 339 S.E.2d at 889. The proper party to sue for malicious prosecution was "the party to the original action, not the attorney[s] representing him." *Id.* *Stiles* recognized that a lawyer can be liable to a third party when the lawyer acts outside the scope of his engagement for a client, but affirmed the case's dismissal against a lawyer (there, the claims were civil conspiracy and allegedly filing a frivolous case) because the "complaint . . . fail[ed] to set forth sufficient facts to remove [the attorney] from the ambit [of the general rule of immunity]." 318 S.C. at 300, 457 S.E.2d at 602.

The order in this case specifically noted the owners did not claim the law firm acted outside the scope of its representation of the HOA. This forecloses the firm's liability for fraud and conversion under *Gaar* and *Stiles*—an attorney is not liable to a third party merely because the firm gave its client incorrect advice. We agree with the circuit court that no one has alleged the firm acted to serve its own interests rather than or in addition to the HOA's interests. Again, the core allegation is that the firm gave the HOA incorrect advice. That allegation will not support a viable claim for fraud or conversion by a third party against a lawyer.

The allegation that the firm made representations to Lloyd's on the owners' behalf does not change this conclusion. Here as well, the claim is based on the firm's supposedly incorrect interpretation of Caravelle's governing documents. The owners say those documents do not make the HOA the "insurance trustee" for damage to the owners' personal property. Even if that is right—the point is disputed and we express no opinion on it—any advice to the contrary (that the HOA *was* the insurance trustee for these losses) would be advice rendered in the scope of representing the HOA. The "outside-of-scope" exception does not apply. The rule in *Gaar* and *Stiles* shields the firm from liability to the owners on these claims.

## B. Legal Malpractice

There are two species of malpractice claims in this case. We deal first with the claim the owners attempted to bring on their own behalf (not on behalf of the HOA).

The first element "[a] claimant in a legal malpractice action must establish [is] the existence of an attorney-client relationship." *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 525, 787 S.E.2d 485, 489 (2016). The owners repeatedly acknowledge the law firm represented the HOA. The owners do not allege the firm also represented them or that they believed the firm represented them.

Instead, the owners claim that letters the law firm sent *could have* led them to believe the firm represented them even though they did not want or authorize the firm to represent them. As part of the support for this argument, they point to the firm's letters to Lloyd's even though the letters went to Lloyd's, not to the owners.

This claim leads to a different dead end. The owners have not alleged an attorney-client relationship. Indeed, they allege the opposite—that there was no such relationship and that the firm erred in acting as if there was one. *See Marshall v. Marshall*, 282 S.C. 534, 539, 320 S.E.2d 44, 47 (Ct. App. 1984) (noting that attaining the status of a client requires *seeking* legal advice). Beyond that, the owners are not suing over the unsolicited advice the firm supposedly gave them. Instead, the owners allege the firm gave incorrect advice to the HOA. We are not aware of a rule allowing one client to sue for advice a lawyer gave a different client. If the firm gave the HOA bad advice, the proper plaintiff would be the HOA.

The owners' last avenue for direct relief against the lawyers is a request to expand the small list of scenarios (there appear to only be two) in which South Carolina allows a third party to sue a lawyer for malpractice. Despite the rule of immunity in *Gaar* and *Stiles*, a third party can occasionally sue an attorney even though the attorney stayed within the scope of representation. The key cases on this are *Fabian v. Lindsay*, 410 S.C. 475, 765 S.E.2d 132 (2014), and *Sentry Select Insurance Co. v. Maybank Law Firm, LLC*, 426 S.C. 154, 826 S.E.2d 270 (2019).

In *Fabian*, an intended beneficiary of a trust sued the settlor's attorney over a drafting error that thwarted the settlor's intention. 410 S.C. at 478, 765 S.E.2d at 134. Our supreme court observed a client intends for an estate plan to follow his or her wishes and that "[t]he focus of a will or estate document is, inherently, on third-party beneficiaries." *Id.* at 491, 765 S.E.2d at 141. It also noted that when an estate planning document does not carry out the client's intent, the client typically may not sue for malpractice because the client is deceased. *Id.* at 490, 765 S.E.2d at 140.

In *Sentry*, an insurance company filed a malpractice claim against the attorney it had hired to represent its insured in a personal injury case. 426 S.C at 156, 826 S.E.2d at 271. Similar to *Fabian*, our supreme court allowed an exception to the general rule that attorneys are immune from liability to third parties because, like in *Fabian*,

not allowing the suit "'would . . . improperly immunize this particular subset of attorneys from liability for their professional negligence.'" *Id.* at 159, 826 S.E.2d at 272 (alteration in original) (quoting *Fabian* 410 S.C. at 490, 765 S.E.2d at 140). There, the potential "escape hatch" for the allegedly inadequate lawyer arose from the fact that the client (the insured) had no motive to sue for malpractice as long as the settlement or judgment was within the policy limits. *See id.* at 152, 826 S.E.2d at 272 (explaining the insurer bears the financial burden of malpractice in that scenario).

We agree that some of the notes struck in *Fabian* and *Sentry* echo in this case given that the HOA exists to serve the common interests of Caravelle property owners and that costs the HOA incurs are passed on to its members. Still, both *Fabian* and *Sentry* noted the critical need to allow those "third-party" suits because of structural issues preventing a traditional malpractice claim. Indisputably, that concern is not present here. The HOA could sue the firm for malpractice but has chosen not to do so. Our supreme court specifically limited *Fabian* and *Sentry* to the circumstances that were before the court in those cases. *See Fabian*, 410 S.C. at 492, 765 S.E.2d at 141 ("Recovery . . . is limited to persons who are named in the estate planning document or otherwise identified in the instrument by their status."); *Sentry*, 426 S.C. at 161, 826 S.E.2d at 273 ("[W]e expressly limit the scope of this opinion so that it does nothing beyond what it expressly states."). We will not read *Fabian* and *Sentry* to authorize more than they advertise. We accordingly affirm the circuit court's dismissal of the legal malpractice claim the owners brought on their own behalf.

**DERIVATIVE CLAIMS**

The last claims are the two derivative claims the owners brought on the HOA's behalf; one for legal malpractice and the other for breach of fiduciary duties.

No authority in South Carolina addresses whether people can derivatively sue attorneys for malpractice. Some states permit these claims. *See, e.g.*, *Deep Photonics Corp. v. LaChapelle*, 385 P.3d 1126 (Or. Ct. App. 2016). California does not. *See McDermott, Will & Emery v. Superior Ct.*, 99 Cal. Rptr. 2d 622 (Cal. Ct. App. 2000).

Even though the cases come out differently, the attorney-client privilege is a main consideration on both sides. For example, in *Deep Photonics*, the Oregon Court of Appeals held derivative malpractice claims would be allowed when they do not "implicate the attorney-client privilege as a barrier to defendants mounting a defense" such as when an exception to the rules of professional conduct allows the

attorney to reveal privileged communications. 385 P.3d at 1137-38. Conversely, in *McDermott*, the California Second District Court of Appeal held derivative legal malpractice claims would not be allowed because they have the "dangerous potential for robbing the attorney defendant of the only means he or she may have to mount any meaningful defense" and "effectively place[] the defendant attorney in the untenable position of having to 'preserve the attorney client privilege (the client having done nothing to waive the privilege) while trying to show that his representation of the client was not negligent.'" *McDermott*, 99 Cal. Rptr. 2d at 626 (quoting *Kracht v. Perrin, Gartland & Doyle*, 268 Cal. Rptr. 637, 640-41 (Cal. App. 1990)).

South Carolina allows an attorney to reveal information that is protected under the attorney-client privilege "to respond to allegations in any proceeding concerning [his] representation of the client." Rule 1.6(b)(6), RPC, Rule 407, SCACR. Even so, we share California's concern that allowing derivative lawsuits compromises the attorney-client relationship and places the client and lawyer in a difficult position.

We can envision other issues on the horizon as well. Derivative lawsuits represent a challenge to the rule that a corporate entity is managed by its directors, not its members. *Carolina First Corp. v. Whittle*, 343 S.C. 176, 187, 539 S.E.2d 402, 408 (Ct. App. 2000). These claims are thus a direct challenge to the HOA's decision *not* to file a malpractice suit. We are concerned about these sorts of derivative claims given that the relationship between homeowners and homeowners' associations are often contentious and commonly involve dissent.

Still, we must recognize there are counterpoints to these concerns. There are heightened pleading requirements designed to deter plaintiffs from filing baseless claims. There is also the possibility that a derivative lawsuit might spur an HOA to file a valid malpractice claim it has resisted filing, that the HOA might choose to waive the attorney-client privilege, or that the parties could agree that certain legal issues control. The HOA might also foreclose further litigation by settling the potential malpractice claim or voting to terminate the derivative suit; decisions that may be the HOA's to make subject to the business judgment rule. *See Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 131 (4th Cir. 2020) (stating homeowners' association owned the derivative claims asserted by a resident and had the right to resolve the derivative lawsuit as it saw fit, including by settling or aborting it); *Boland v. Boland*, 31 A.3d 529, 551 (Md. 2011) (stating special litigation committees composed of disinterested directors can recommend terminating derivative lawsuits). Our concerns about allowing these derivative claims are genuine, but they are also our attempt to imagine issues that may arise in the future, and we do not see the future better than anyone else.

There are no defects in how the owners pled these claims. *See* Rule 23(b)(1), SCRCP (setting out the pleading requirements for derivative claims). The firm argues the owners did not claim the HOA suffered any damages, but the amended complaint does allege, albeit very generally, that the HOA was damaged. *See Brown v. Stewart*, 348 S.C. 33, 49, 557 S.E.2d 676, 684 (Ct. App. 2001) (stating a derivative claim "seek[s] to remedy a loss to the corporation"). Under the liberal rules governing motions to dismiss and sufficiency of complaints, this general averment is enough. *See Skydive Myrtle Beach, Inc. v. Horry County*, 426 S.C. 175, 180, 826 S.E.2d 585, 588 (2019) ("At the Rule 12 stage, . . . the first decision for the trial court is to decide only whether the pleading states a claim.").

The owners submitted an expert affidavit supporting their complaint as required by section 15-36-100 of the South Carolina Code. *See* S.C. Code Ann. § 15-36-100(B) (Supp. 2021) (stating a contemporaneous affidavit of an expert specifying the professional's negligence is required in actions for damages alleging professional negligence). While, like the amended complaint, this affidavit is generic in some ways, it too contains the minimal information necessary to survive a motion to dismiss. Our supreme court has held that section 15-36-100 requires only that the affidavit specify the "breach" element of malpractice. *Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 537, 725 S.E.2d 693, 696 (2012). This affidavit does that.

Dismissing this case at the pleading stage would require us to look past the fact that the derivative claims were properly alleged and rely exclusively on public policy. The first place we look for public policy is to the legislature. The second is to binding precedent. Because neither precludes this suit's filing, we believe the better course is to exercise restraint.

**CONCLUSION**

We affirm the circuit court's decision to dismiss the direct claims and reverse the circuit court's decision to dismiss the derivative claims.

**AFFIRMED IN PART AND REVERSED IN PART.**

**KONDUROS and HILL, JJ., concur.**